IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER M. MALECKI, | ) | CASE NO. 3:12CV1658 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, [1] | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Christopher M. Malecki ("Plaintiff" or "Malecki") seeks judicial review of the

final decision of Defendant Commissioner of Social Security ("Commissioner") denying his

applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act

(the "Act"), 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income ("SSI") under Title

XVI of the Act, 42 U.S.C. § 1381 *et seq.*  Doc. 1.  This matter has been referred to the

undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule

72.2(b)(1).  As set forth below, the Administrative Law Judge ("ALJ") failed to fully and fairly

develop the record.  For that reason, the final decision of the Commissioner should be

**REVERSED** and **REMANDED**.

## I.  Background

### A.     Factual and Procedural Overview

Malecki was born on March 1, 1980, and was 23 years old on his alleged disability onset

date and 30 years old at the time of the ALJ's decision.  Tr. 19, 30.  He graduated from high

school and completed a few of years of college at Bowling Green State University but did not

earn a degree.  Tr. 30-31.  Malecki has worked as a cashier, a material handler, and a security

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is hereby substituted for Michael J. Astrue as the Defendant in this case.

guard.  Tr. 30-33.

On January 15, 2008, Malecki filed applications for SSI and DIB, alleging a disability onset date of June 1, 2003.  Tr. 105-15.  Malecki claimed that he was disabled due to a combination of impairments, including anxiety disorder, bipolar disorder, depression, and stomach problems.  Tr. 62-68, 71-76.  The state agency denied Malecki's claims initially and upon reconsideration, and he timely requested a hearing before an administrative law judge.  Tr. 62-68, 71-76.  On August 19, 2010, a hearing was held before Administrative Law Judge Stephen C. Fulton (the "ALJ"). Tr. 24-57.  On September 24, 2010, the ALJ issued a decision finding that Malecki was not disabled.  Tr. 9-19.  Malecki requested review of the ALJ's decision by the Appeals Council on November 29, 2010.  Tr. 4-5.  On April 26, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

**B.**     **Administrative Hearing**

Malecki was not represented by counsel at the administrative hearing on December 20, 2010.  Tr. 29.  The ALJ explained to Malecki that he had a right to counsel. Tr. 28-29.  Malecki stated that he had consulted with several attorneys but no one would agree to take his case.  Tr. 28.  The ALJ gave Malecki two additional weeks to find counsel and, if counsel contacted the ALJ within two weeks, he would then consider what the next step would be, i.e., a new hearing or allowing counsel to submit a written memorandum.  Tr. 29-30.  The ALJ further stated that, if he did not hear from counsel within two weeks, he would assume that Malecki was unable to obtain representation and would go ahead and render a decision.  Tr. 30.  Malecki acknowledged these instructions but at no time did he waive his right to counsel.  Tr. 30.

During the hearing, Malecki discussed the treatment he received for his various impairments.  In particular, he stated that he was hospitalized in May 2008 for depression and anxiety.  Tr. 36-37, 39.  He explained that he was under the care of Christine Ellis, M.D., who was his family doctor, and that he saw Dr. Ellis until sometime in 2010 (not long before the hearing) when his insurance changed and he had to find a new doctor.  Tr. 37, 56.  Malecki stated that he then started seeing a Dr. Patel in 2010 and had treated with Dr. Patel since that time for management of his diabetes.  Tr. 37.  The ALJ noted that the medical records in the file end in May of 2008 and asked Malecki to explain what other treatment he had since that time.  Tr. 40.  Malecki stated that he had continued treatment at Harbor Behavioral Healthcare ("Harbor") for his mental health issues.  He stated that he saw a therapist every week and that saw a nurse practitioner about every month.  Tr. 39-40, 42.  The ALJ informed Malecki that he wanted to obtain the medical records from Harbor for the period of May 2008 to the date of the hearing.  Tr. 50.  The exchange between the ALJ and Malecki is as follows:

Q        All right.  Let's do this.  One thing I'm going to need from you before you leave here today, we'll see if we can copy that medication list and fax it to me.  But I'm going to need an authorization from you.  We've got a form here so I can get those records from Harbor because we don't have any records at all since May of '08.

A        Okay.

Q        So that's over two years of no records in your file with us.

A        Okay.

Q        And I'm not blaming you for that.  It's just that's the way it is.

A        Okay.

Q        So I want to get those more recent records and look at those and make sure that they get into your file.  So before you leave here today I'm going to have you sign one of those forms.  But right now why don't we try to work out a couple questions for the vocational expert . . . .

Tr. 50.

In addition, at the conclusion of the hearing, Malecki provided the ALJ with the contact information for Dr. Patel, his primary care physician since 2010.  Tr. 56.  The ALJ stated that Malecki would also need to complete an authorization for Dr. Patel so that he could obtain Dr. Patel's records.  Tr. 56-57.  The ALJ ended the hearing with the following statement regarding the  unproduced medical records from 2008 to 2010:

> ALJ:   Okay.  So as soon as that fax is through we'll give you that paper back. We'll take the authorization and what I'm going to do is I'll get the more recent records.  I'll make sure they get into your file.  Let me study those as well as the records that are already in the file.  Let me consider everything that you told me here today as well as what the vocational expert told me.  Then we will put the decision in writing and mail it to you.

Tr. 57.

## II.  Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).   In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

4

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920 (b)-(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity ("RFC") and vocational factors to perform work available in the national economy.  *Id.*

### III.  The ALJ's Decision

The ALJ determined that Malecki met the insured status requirements of the Act through September 30, 2010.  At Step One of the sequential analysis, the ALJ determined that Malecki had not engaged in substantial gainful activity since his alleged onset date of June 1, 2003.  Tr. 11.  At Step Two, he found that Malecki had the following severe impairments: depression; anxiety; and bipolar disorder.  Tr. 11.  At Step Three, the ALJ found that Malecki did not have an impairment or combination of impairments that met or medically equaled one of the Listed

Impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1.[2]  Tr. 12.  The ALJ then determined

Malecki's RFC, finding that he could perform a full range of work at all exertional levels without

any postural or environmental limitations.  The ALJ also incorporated in the RFC the limitations

that Malecki could understand and remember simple instructions, concentrate for two hour

periods over an eight hour workday on simple tasks, interact appropriately with coworkers and

supervisors, and adapt to changes in the work setting.  Tr. 14.  At Step Four, the ALJ determined

that Malecki could perform his past relevant work as a cashier.  Tr. 17.  In addition, the ALJ

made an alternative finding at Step Five that Malecki could perform other jobs that existed in

significant numbers in the national economy.  Tr. 18.  Thus, the ALJ concluded that Malecki was

not disabled.  Tr. 18-19.

## IV.  Arguments of the Parties

Malecki objects to the ALJ's decision on several grounds.  First, Malecki argues that the

case should be remanded because the ALJ failed to adequately develop the record.  Second,

Malecki argues that the ALJ's RFC determination is not supported by substantial evidence.

Third, Malecki asserts that the ALJ failed to properly discuss and analyze his medication history.

Fourth, Malecki contends that the ALJ erred because he relied upon flawed vocational expert

testimony.

In response, the Commissioner asserts that the ALJ properly developed the record and

remand is inappropriate.  The Commissioner also argues that substantial evidence supports the

ALJ's RFC determination.  The Commissioner further argues that the ALJ properly analyzed

Malecki's medication history.  The Commissioner finally argues that the ALJ's hypothetical

---

[2]  The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

question to the VE accurately accounted for all of Malecki's credible limitations.

## V.  Law & Analysis

### A.    Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B.    Remand is appropriate in this case because the ALJ failed to fully and fairly develop the record

As discussed above, Malecki argues that the ALJ failed to adequately develop the record, by not obtaining medical records from Harbor Behavioral Healthcare, Dr. Ellis, and Dr. Patel for the period of May 2008 to August 19, 2010, the date of the administrative hearing.  Doc. 13, pp. 8-9.  This argument has merit.

"Social security proceedings, unlike judicial ones, are inquisitorial, not adversarial." *Wright–Hines v. Comm'r of Soc. Sec.,* 597 F.3d 392, 397 (6th Cir. 2010) (White, J., concurring) *(*citing *Sims v. Apfel,* 530 U.S. 103, 110–11, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).  In general, "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y Health & Human Servs*., 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).  Significantly, however, "special circumstances" exist "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures . . . ." *Wilson v. Comm'r Soc. Sec*., 280 Fed. App'x 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y Health & Human Servs*., 708 F.2d 1048, 1051–52 (6th Cir. 1983)).  In such a case, "an ALJ has a special, heightened duty to develop the record." *Id.*  "To satisfy this special duty," the Sixth Circuit instructs, "the administrative law judge must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations and quotation marks omitted) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)).

The facts in this case are precisely the special circumstances recognized in *Wilson.* Malecki was not represented by counsel at the administrative hearing and, upon review of the hearing transcript, it is evident that he was unfamiliar with the procedures for the hearing.  In addition, it is not clear that Malecki was capable of presenting an effective case without representation.  His responses to the ALJ's questions were confusing and rambling and he sometimes struggled to answer the ALJ's questions.  The undersigned therefore finds that the ALJ had a heightened duty to fully and fairly develop the record.

8

The ALJ failed to satisfy his heightened duty in this case.  During the hearing, the ALJ indicated that he needed the missing medical records, i.e., the records covering the time period from May 2008 to the hearing date in 2010, in order to complete the disability analysis.  In other words, the ALJ recognized that the missing records were important to the disability determination.  In fact, as set forth above, the ALJ specifically stated that he would obtain the records and would consider the records, along with the other evidence in the record, in rendering his disability determination.  However, the ALJ failed to obtain the missing medical records.  This evidence is clearly relevant to Malecki's disability claims and should have been considered by the ALJ before he issued his decision.  Accordingly, this case should be remanded for consideration of the unproduced medical records for the period of May 2008 to August 19, 2010, the date of the administrative hearing, to ensure that Malecki's claims are fairly and completely adjudicated.  *See, e.g., Miksch v. Massanari*, 18 Fed. App'x. 632, 634 (9th Cir. 2001) (holding that ALJs have "an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered").

The Commissioner contends that Malecki is to blame for the ALJ's failure to obtain the medical records because he did not sign the necessary authorizations so that the ALJ could obtain the records.  Doc. 14, p. 10.  This argument is unpersuasive.  First, there is no evidence in the record that the authorizations were ever provided to Malecki.  Second, and more importantly, given his heightened duty to fully and fairly develop the record, the ALJ had a duty to follow up with Malecki to acquire the necessary authorizations so that he could obtain the missing medical records.  Thus, even if Malecki did not sign the authorizations after the hearing, the ALJ should have made additional efforts to obtain the medical records before issuing his decision.

The Commissioner also argues that any error on the part of the ALJ to develop the record is harmless because substantial evidence exists in the record to find that Malecki was not disabled. This argument is unavailing. As correctly noted by the Commissioner, a district court need not remand when an ALJ fails to develop the record if substantial evidence already in the record supports the ALJ's decision. *See Hall v. Comm'r of Soc. Sec.*, 148 Fed. App'x. 456, 461–62 (6th Cir. 2005); *but see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 750 (6th Cir. 2007) (refusing to invoke harmless error exception where the ALJ entirely failed to address the primary treating physician's opinion, fearing "the exception [would] swallow up the rule."). Here, the ALJ acknowledged that the missing medical records were important to his determination and stated that he would obtain the records and consider them before he issued his decision. The ALJ did not do so, however, nor did he explain in his decision that he chose to proceed without the missing medical records because other substantial evidence in the record supported a finding that Malecki was not disabled. The ALJ did not adequately explain how he reached his disability determination without reviewing two years worth of missing medical records from three different medical providers – one of whom Malecki saw on a weekly basis for therapy sessions. The failure to consider this evidence was prejudicial to Malecki because it appears to be directly relevant to his claims for disability. The Commissioner's *post hoc* rationale is not a sufficient substitute for a reasoned analysis by the ALJ. Moreover, it is unknown what is actually contained in the missing medical records because they have not been produced at any stage of this action. It is therefore impossible to say whether or not this evidence would have changed the outcome of this case under the sequential analysis. Thus, the ALJ's failure to obtain and consider these records cannot be said to be harmless error. *See Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory

procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

Finally, since the recommended resolution would "direct [the ALJ] to cure some specific defect in the administrative proceeding, such as the ALJ's failure to develop the record or properly evaluate the evidence . . . the district court should [ ] remand[ ] the case pursuant to sentence four, rather than sentence six, of 42 U.S.C. § 405(g)." *Buckner v. Apfel,* 213 F.3d 1006, 1011 (8th Cir. 2000); *Lynch v. Commissioner of Social Sec.*, No. 1:12-cv-75, 2013 WL 264670, at *11 (S.D. Ohio Jan. 23, 2013) (remanding case under sentence four of 42 U.S.C. § 405(g) for further development of the record).[3]

## C.    Other Issues

The undersigned will not address Malecki's remaining three arguments because, on remand, the ALJ's evaluation of the additional medical records from 2008 to 2010 may affect his findings under the sequential disability evaluation.  *See Trent v. Astrue*, Case No. 1:09CV2680, 2011 U.S. Dist. LEXIS 23331, at *19 (declining to address the plaintiff's remaining assertion of error because remand was already required and, on remand, the ALJ's application of the treating physician rule might impact his findings under the sequential disability evaluation).

---

[3]  Section 405(g) provides for two types of remand:  a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision or a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision.  *See, e.g., Hollon v. Commissioner*, 447 F.3d 477, 486 (6th Cir. 2006).  The court cannot consider evidence that was not submitted to the ALJ in the sentence four context; it only can consider such evidence in determining whether a sentence six remand is appropriate.  *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster*, 279 F.3d at 357.

## VI.  Conclusion and Recommendation

For the foregoing reasons, the final decision of the Commissioner denying Plaintiff

Christopher M. Malecki's applications for SSI and DIB **should be REVERSED and the case**

**REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent

with this Report and Recommendation.


Dated: March 21, 2013

_____
Kathleen B. Burke
United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).